(41 Misc. Rep. 439.)

## WEIDENFELD v. HOLLINS et al.

(Supreme Court, Special Term, New York County. October, 1903.)

**1. DISCOVERY—EXAMINATION BEFORE TRIAL.**

    A syndicate was formed to buy and sell a controlling interest in a certain corporation through two members of the syndicate appointed as general managers, the profits to be. divided among the members of the syndicate in proportion to the liabilities assumed. A member brought an action to compel the managers to account, and for violations of their trust and for secret profits, and alleged that other members of the syndicate, who were his fiduciaries, had, with -the connivance of said managers, shared in the fraudulent transactions, by deriving an advantage in which plaintiff had no part. *Held*, that plaintiff was entitled to examine such defendants before trial, in order to show that they were his fiduciaries, and had reaped an indirect advantage from sales made by the syndicate, in which he had not been allowed to participate.

Action by Camille Weidenfeld against Harry B. Hollins and others. Motion to vacate an order for the examination of certain defendants before trial. Order modified.

Coudert Bros., for plaintiff.

Davies, Stone & Auerbach, for defendants Hollins and others.

Carter, Hughes, Rounds & Schurman, for defendant William H. Butler.

Harmon & Mathewson, for defendant Frank Tilford.

Simpson, Thatcher, Barnum & Bartlett, for defendant George R. Sheldon.

Peckham, Miller & King, for defendant George P. Butler.

Parsons, Closson & McIlvaine, for defendant W. Bourke. Cockran.

DAVIS, J. This is a motion to vacate an order made herein on August 6, 1903, for the examination of the defendants Burke, Edey, Govin, Tilford, and Sheldon before trial, pursuant to section 873 of the Code of Civil Procedure. The order was granted upon the application and affidavit of William H. Butler, one of the defendants. Only Burke, Edey, and Sheldon have been served with the order. The principal grounds upon which the motion is based are that the testimony sought is neither material nor necessary, and that the proposed examination is in the nature of an inquisitorial proceeding, and that its purpose is to procure evidence for use in a proceeding not in this court, but pending in the Court of Chancery of New Jersey. It is also urged in support of the motion that some of the defendants sought to be examined have no direct knowledge of the facts upon which they are to be questioned, and that some of the proposed witnesses reside in the state of New York, and have no present intention of changing their residence, but expect to be available as witnesses when the cause shall be reached for trial. The action is brought to compel an accounting by the defendants Tilford and Govin as managers of a syndicate of which the plaintiff and the other parties, except the defendant George P. Butler, were members. The syndicate was formed to purchase a controlling interest in the corporation known as the Henry Clay Bock & Company, Limited. By written agree-

ment among the members of the syndicate, the defendants Tilford and Govin were appointed syndicate managers, with power "to purchase, as they may in their discretion deem for the interest of the syndicate, for account of the syndicate, shares of said stock or voting trust certificates at a cost not exceeding in the aggregate the sum of $1,200,-000 and to dispose of said shares of stock or voting trust certificates with interest, or any part thereof, from time to time, at public or private sale, whether for cash or stock or bonds or other securities of any corporation, or partly for cash and partly for stocks or bonds or other securities, in their discretion." The limit of cost was afterward increased to $1,500,000. The complaint sets forth the various agreements creating the syndicate, and defining the powers of the syndicate managers, Tilford and Govin, and alleges that the defendants Tilford and Govin agreed with the other members of the syndicate to exercise their powers as syndicate managers in good faith, and solely for the benefit and advantage of the plaintiff and the other members of the syndicate, and that they would, in good faith and with due diligence and reasonable skill, effect a sale of the stock to be acquired by them for the syndicate for not less than its reasonable value, and at the best price and upon the best terms obtainable, and would fully and fairly account for all the proceeds of such sale, and for all the consideration which should induce them to make the sale. The complaint further states that Tilford and Govin have never rendered an account to the plaintiff as to their dealings with the said stock, except that on the 20th day of June, 1902, they informed the plaintiff that the stock acquired by them had been sold to the Havana Commercial Tobacco Company for $2,000,000, and that this sum exceeded the cost of the stock to the syndicate and expenses of management by $250,-000, and that the defendants Tilford and Govin tendered the sum of $10,416.67 to the plaintiff as his share of the profit of the same. The complaint further alleges that the reasonable value of the stock so sold was, according to the statement of the defendant Tilford, not less than $10,000,000, and that the pretended sale of the stock to the Havana Commercial Company for $2,000,000 was made in bad faith and fraudulently, and in violation of the trust confided to the defendants Tilford and Govin. The complaint further alleges that the consideration received by the defendants Tilford and Govin was not simply the $2,000,000, but other considerations and inducements received by them, and for them personally, which they have not disclosed or accounted for to the plaintiff or to any of the other underwriters. Judgment is prayed for against Tilford and Govin, requiring them to account for all their dealings with the stock purchased by them as syndicate managers.

The defendant Govin, in his answer, admits that he and the defendant Tilford were appointed syndicate managers, and that they sold the whole of the stock acquired by them to the Havana Commercial Company, but states that the sole consideration of the sale was $2,000,-000, and that the sale was made in good faith and for a full and adequate value, and that they have not yet accounted for the proceeds of the sale, but are ready to account and pay over. They ask for the dismissal of the amended complaint, or that they be permitted to ac-

count.   The answer of the defendant Tilford is substantially the same
as that of his colleague, Govin.

The answer of William H. Butler, at whose instance the order of
examination was obtained, brings a new issue into the case. It not
only alleges a violation of their trust as syndicate managers on the
part of Tilford and Govin, but charges fraudulent conduct on the part
of other members of the syndicate with reference to the disposition of
the stock; and it asks for judgment against those defendants, requir-
ing them also to account for all profits and considerations directly or
indirectly received by them from the disposition of said shares.   The
answer alleges that the stock was purchased for the syndicate; that
the defendants Govin, Wilson, and Tilford, and the defendants Hol-
lins, Burke, Edey, Govin, and Busch, constituting the firm of H. B.
Hollins & Co., had entered into a fiduciary relation with the defend-
ant William H. Butler, and were bound in good faith to deal with the
stock for the benefit of all parties to the syndicate agreement, and,
in violation of their duty, these defendants, Govin, Wilson, Tilford,
Burke, Edey, and Busch, fraudulently conspired to procure for them-
selves, and others connected with them, large profits from the dispo-
sition of the stock, and to deprive the defendant William H. Butler of
his share thereof, and for that purpose they made a pretended sale of
the said stock to the Havana Commercial Company for $2,000,000,
which was much less than its real value.   The answer also alleges
that, as a part of the scheme, a new corporation was to be formed, to
which the said shares of the Bock Company or the shares of the
Havana Commercial Company, enhanced in value by the acquisition
of the Bock shares, should be conveyed in exchange for other securi-
ties of large value, from the sale of which large profits would come to
the defendants Hollins, Burke, Edey, Busch, Govin, and others asso-
ciated with them, to the exclusion of the defendant William H. Butler.
It further alleges that, pursuant to this conspiracy, the defendants
named, without the knowledge or authority of Butler, procured the
transfer of the Bock shares to the Havana Commercial Company
upon the pretended consideration of $2,000,000, and at that time the
defendants Hollins, Burke, Edey, Govin, and Busch were the owners
of a majority of the capital stock of the Havana Commercial Com-
pany, and the defendant Hollins was its president and one of its
directors, and the defendants Burke, Govin, and Jordan were also
directors; that the company was largely indebted and seriously em-
barrassed, being actually insolvent or on the verge of insolvency;
that its shares of stock were practically worthless, and its business
had shown a loss since its organization; that at the instance of the
defendants Hollins, Burke, Edey, Govin, and Busch, it had paid out
large sums of dividends, which had not been earned; that its real com-
petitor was the said Bock Company; that a large part of its indebted-
ness was owing to the Guaranty Trust Company; that the firm of H.
B. Hollins & Co., composed of the defendants Hollins, Burke, Edey,
Govin, and Busch, had assumed and became liable for the whole or
greater part of this indebtedness, amounting to upward of $1,500,000;
that the Havana Commercial Company was unable to pay $2,000,000
or any other sum for the shares of the Bock Company; that these

shares were not transferred to the Havana Commercial Company in good faith or as an independent purchaser; that the company had notice of all these facts, and that the transfer was fraudulent and in violation of the rights of William H. Butler, and solely for the purpose of giving control and substantial ownership of the said Bock shares to the owners of the stock of the Havana Commercial Company, controlled by the defendants named, and to enable those defendants, by the disposition of securities received in exchange, to make large profits for themselves and for their associates, to the exclusion of the defendant William H. Butler. It also alleges that these particular defendants named, composing the firm of H. B. Hollins & Co., together with Wilson, Tilford, and other defendants associated with them, actually made large profits in connection with the disposition of these Bock shares, over and above the alleged selling price of $2,000,000, and have failed to disclose and account for the same. Butler then asks for judgment requiring these defendants, composing the firm of H. B. Hollins & Co., together with Wilson and Tilford and other defendants, so far as they became associated with them in this particular transaction, to account to the plaintiff and to William H. Butler, and other parties entitled thereto, for all their dealings with reference to the disposition of the shares of the Bock Company, and that the share of William H. Butler and other parties in interest in any moneys, securities, property, and profits realized as alleged may be ascertained, and judgment therefor be rendered.

It thus appears that the defendant William H. Butler and the other defendants, including those sought to be examined under the order, were jointly interested in the purchase and sale of a controlling interest in the Bock Company, the profits, if any, to be divided amongst them in proportion to the responsibilities assumed by each as shown by the underwriting agreement. Each member of the syndicate thus became a fiduciary of all the others, and was bound to deal in strict fairness with them so far as the joint property was concerned, and if any one or more secretly or indirectly or otherwise gained an advantage over the others, he cannot be allowed properly to retain it, but must account to his associates, and share it with them. The answer of William H. Butler raises the issue as to whether or not the defendants Hollins, Edey, Burke, Busch, and Sheldon, as well as Govin and Tilford, had reaped an advantage from the disposition of the syndicate stock, from which the defendant William H. Butler had been excluded, and for which they must account. The issue raised by Butler is not alone as to the right to an accounting from the two syndicate managers. That was raised by the amended complaint, and the answer of the managers admitted their liability to account. The claim of Butler is that other members of the syndicate, who, under the syndicate agreement, were to have nothing to do with the purchase or disposition of the stock, so far as active participation in it was concerned, had so conducted themselves with reference to the sale of the stock as to render them liable to account. In view of the fact that full control over the transaction was lodged in the syndicate managers, and that the other members of the syndicate were to have nothing to do with it, the defendant Butler would not be entitled to an accounting

from any of the other members of the syndicate unless he showed
on the trial that they had acted improperly with reference to the pur-
chase and sale of this stock, or had reaped an advantage therefrom,
from which one or more of the other members of the syndicate had
been excluded.    Under the peculiar circumstances of this case, proof
that the parties against whom an accounting is asked were Butler's
fiduciaries would not entitle him to an accounting.    He would have
to go further, and show that they had received an advantage from the
handling of the joint property not shared by Butler.    It therefore is
material and necessary to the case of the defendant Butler to show
that in some way the defendants, other than the two managers,
against whom he asks for an accounting, had acted improperly with
reference to the purchase and sale of the said stock, or had received
considerations from which Butler had been excluded.    In other
words, before Butler can get his decree for an accounting against any
of the defendants, other than the two managers, he must show that
they were his fiduciaries, and in addition he must show that they had
realized indirect profits or advantages from the disposition made of
the joint property, in which he was not allowed to participate.    See
Parks v. Gates, 54 App. Div. 512, 66 N. Y. Supp. 1034.    It is clear,
therefore, that the testimony sought by the defendant Butler is ma-
terial and necessary for the prosecution of his claim.    Having reached
this conclusion, I will deny the motion to vacate the order, but will
modify it so as to limit the examination to proof of profits in general,
and the means by which the alleged indirect advantage was acquired
by the defendants named.    In other words, the examination should
be so limited in scope as not to become an accounting in advance of
the judgment of the court establishing the right to the accounting.
In view of the fact that additional affidavits were submitted on both
sides, the decision of the motion is based upon all the papers, and
not alone upon the papers on which the original order was granted.
The allegation in the affidavits that the testimony sought is to be used
in a proceeding in a court of New Jersey is not sustained by proof,
and the statement of the witnesses sought to be examined that they
reside in New York state, and they expect to be within the jurisdic-
tion and available at the time of the trial, is not a ground for vacating
the order.    Ten dollars costs.

Ordered accordingly.